Petition of **SOUTHERN STEAMSHIP COMPANY** and Philadelphia and Norfolk Steamship Company for exoneration from or limitation of liability.

No. 1733.

United States District Court
D. Delaware.

Sept. 22, 1955.

James R. Morford and Ernest S. Wilson (of Morford & Bennethum), Wilmington, Del., and Thomas E. Byrne, Jr. (of Krusen, Evans & Shaw), Philadelphia, Pa., for petitioners, for exoneration from or limitation of liability.

Herbert L. Cobin, Wilmington, Del., and Henry E. Howell, Jr. (of Jett, Sykes & Howell), Norfolk, Va., for claimants, Hudson and Gelardos.

RODNEY, District Judge.

The present questions grow out of proceedings in Admiralty. The steamship Southern Districts on December 2, 1954 left Freeport, Louisiana, bound for Bucksport, Maine, where she was due to arrive on December 10. The vessel never arrived and after elaborate search and investigation, no traces have been found. Subsequently, limitation of liability proceedings were filed by the owner under 46 U.S.C.A. § 185 et seq., and questions arising from a motion to dismiss those proceedings were discussed in an opinion reported in D.C., 132 F.Supp. 316. Pursuant to the limitation of liability proceedings, and the injunctive process against separate and individual suits therein embraced, a number of answers to said petition have been made and separate claims have been filed in the proceedings. Of these claims it is now necessary to consider but two.

(a) A claim was filed on behalf of the widow and two minor children, sole dependents, by Corinne L. Hudson, administratrix of the estate of Dwight L. Hudson, a mate of said vessel, and damages were claimed in the amount of $250,000.

(b) A claim was filed on behalf of the mother and sole dependent by Marinos Gelardos, administrator of the Estate of Sotirios Gelardos, a seaman of said vessel and damages were claimed in the amount of $75,000.

Present questions arise from agreements between the parties and a settlement of the amounts to be paid to the claimants and petitions to this Court for the approval of the settlement of the claims and the allocation of the damages among the parties entitled.

A general right of action (if not estopped by the limitation of liability proceedings provided by 46 U.S.C.A. § 181 et seq.) would exist under 46 U.S.C.A. § 688. Under this section a right of action is given for the death of a seaman and the right of action is vested in the personal representative of the seaman with the right to "maintain an action for damages at law, with the right of trial by jury * * *." To this is added the important provision "and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable * * *."

We are thus directly remanded to the Federal Employers' Liability Act of 1908 as amended and appearing as 45 U.S.C.A. § 51 et seq. There the Act expressly gives the right of action to the personal representative "for the benefit of the surviving widow or husband and children of

such employee; and, if none, then of such employee's parents * * *."[1]

While the Act does not expressly spell out "dependency" as applicable to a widow, children, or parents with the same exactitude that it does as to "next of kin",[2] yet the statute has uniformly been construed as intended only to compensate the surviving relatives of such deceased employee for the actual pecuniary loss resulting to the particular person or persons for whose benefit an action is given.[3]

 It is entirely clear that the personal representative does not sue for the benefit of the estate of the deceased nor does any amount recovered or received become an asset of the deceased's estate, but the representative sues by virtue of an express statutory designation and holds the amount of recovery in the nature of a trustee for the benefit of those persons upon whose behalf the statute authorizes recovery.[4]

While I can find no express language in the statutes requiring the jury or Court to allocate or apportion the damages to the respective parties entitled,[5] yet since the recovery by the personal representative is not an asset of the estate and the personal representative has presumptively given no bond securing the recovery, it is not unusual for the fact-finding instrumentality, be it jury or Court, to apportion the damages to each party entitled. This is especially true since the aggregate recovery, in solido, may be composed of several distinct claims, e. g., a widow and minor children, and since both claims are hinged upon dependency and this dependency is for varying amounts and different durations, so the allocation or apportionment is required at some stage.[6] It is not entirely clear in some cases where damages would be allocated if this allocation was not had by the fact finding tribunal. In Gulf, Colorado & S. F. Ry. Co. v. McGinnis, 228 U.S. 173, 33 S.Ct. 426, 57 L.Ed. 785, it was said the allocation should be by the jury. In Central Vermont Ry. Co. v. White, 238 U.S. 507, 35 S.Ct. 865, 59 L.Ed. 1433, it was held that the above language of the Gulf case should be confined to the facts upon which it operated and that a general verdict, in solido, without allocation, could not be set aside, since the defendant could not be injured thereby. Many authorities sustain this view. However, in some jurisdictions the authority granting letters of administration are not qualified or authorized to make the allocation, and assuredly the administrator himself has no such power. These remarks, however, have no direct application to this matter but do show the requirement of an allocation by the Court in the present case.

Attention should also be drawn to the fact that apportionment of damages among the parties entitled is expressly required by a companion statute, 46 U.S. C.A. § 761, et seq., treating of Death on the High Seas by Wrongful Act. This statute, passed at the same session of Congress as 46 U.S.C.A. § 688, supra, expressly gives to a personal representative an action in admiralty for the death of a person on the high seas, more than a marine league from shore. Indeed this Act would seem to have especial perti-

1. The two matters here considered fall within these two categories of dependency.

2. As to whom the statute expressly requires the next of kin to be "dependent" upon such employee.

3. Gulf, Colorado & S. F. Ry. Co. v. McGinnis, 228 U.S. 173, 33 S.Ct. 426, 57 L.Ed. 785.

4. Chicago, Burlington & Quincy R. R. Co. v. Wells-Dickey Trust Co., 275 U.S. 161, 48 S.Ct. 73, 72 L.Ed. 216; Stark v. Chicago, North Shore & Milwaukee Ry. Co., 7 Cir., 203 F.2d 786.

5. See Chesapeake & Ohio Ry. Co. v. Kelly, 241 U.S. 485, 487, 36 S.Ct. 630, 60 L. Ed. 1117.

6. See general list of cases governing the division among beneficiaries of amount awarded by a jury or received in settlement upon account of wrongful death. Schultz v. Western Farm Tractor Co., 111 Wash. 351, 190 P. 1007, 14 A.L.R. 516; Murphy v. Duluth-Superior Bus Co., 200 Minn. 345, 274 N.W. 515, 112 A.L.R. 30; 171 A.L.R. 204.

nency to this case where the deaths presumably occurred on the high seas, and it would seem that actions could have been brought under this Act if not prevented by the limitation of liability proceedings. While the Supreme Court in Lindgren v. United States, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686, declined to consider, as not material therein, the effect on this statute of the passage of 46 U.S.C.A. § 688, some two months later, yet they have been construed as both being effective and applicable to a somewhat different class of beneficiaries.[7]

■ This then being a proceeding connected with a limitation of liability proceedings and, under the terms of which separate suits may not be brought, the claims will be considered in the nature of complaints and the petition for approval of the offer of settlement will be received and, since no jury is available for the division of the amount of settlement, such division will be made by the Court.

The Court being somewhat familiar with the circumstances and knowing the difficulties and delay attendant in such cases, approves the settlement of the claims respectively for the sum of $32,500 in the Hudson claim, and $7,500 in the Gelardos claim.

■ The Court also approves the allowances to counsel of 33⅓% of the respective settlements as agreed to by the petitioners. This amount has been approved in many cases.[8]

### Hudson Claim

As to this claim the Court must assume the burden of allocation of the amount among the parties entitled. From the figure of settlement of $32,500 the counsel fee of 33⅓% being deducted there remains the sum of $21,666.50. The deceased was 37 years old at the time of his death. By mortality tables he had an expectancy of life of 31.75 years. The widow was born October 3, 1913 and now has an expectancy of life of 27.62 years. Of the two minor children, Elizabeth L. Hudson was born September 4, 1943 and had an expectancy of support of nine years until she arrives at maturity. The other child, Susan, was born September 25, 1948 and had an expectancy of support of 14 years. Since the fact of dependency is the basis of allocation, several questions must be considered.

■ The determination of the pecuniary loss suffered by the various relatives of the deceased is fraught with difficulties. As Judge Moscowitz said in the Haidacker case,[9] "The most that a Court and jury can do is to try to make a good guess based upon the evidence * * *. There should be a fair determination considering the reasonable probabilities of the case." For example the interest of a minor child is ordinarily based upon the period until he reaches maturity of 21 years when dependency ordinarily ceases. Physical incapacity however would affect such questions.[10] This physical incapacity is not only that which exists at the time of the allocation but such as might subsequently arise.

The dependency of the widow, too, is subject to several questions. Usually the expectancy of life of the deceased is the accepted criterion, but in some cases where the widow was considerably older than the deceased then it would not be reasonable to base her dependency beyond the period of her own expectancy of life. At least one case had considered the arrival of the widow at the age of 65 as material in considering her dependency and this must have been based upon the view that payment of Social Security affected the question of her dependency upon her husband.

■ Insofar as the widow is concerned in the present matter, it appears

---

7. The Four Sisters, D.C., 75 F.Supp. 399; In re Klein's Estate, 162 Misc. 589, 295 N.Y.S. 197.

8. In re Klein's Estate, 162 Misc. 589, 295 N.Y.S. 197; Tumolo v. Reading Co., D.C., 52 F.Supp. 956.

9. D.C., 52 F.Supp. 713.

10. Haidacker v. Central R. Co. of New Jersey, D.C., 52 F.Supp. 713, 715; Schultz v. Western Farm Tractor Co., 111 Wash. 351, 190 P. 1007, 14 A.L.R. 514.

that her expectancy of life was somewhat less than her husband's. Mortality tables, however, are not fixed rules in the computation of damages,[11] and the present case is an exception to their accuracy. I, therefore, adopt as one basis for the widow's allotment the expectancy of life of the deceased of 31.75 years.

In this case the exact apportionment of the damages between the widow and children is not possible because one factor, viz., the amount of support given to each by the deceased, is lacking and indeed in the case of the children is most difficult to determine. The best that can be done is to compute the periods of dependencies and to divide the amount of settlement in that proportion.

Insofar as the children are concerned, ordinary state laws governing the distribution of decedents' estates would treat each child equally. This may not be done in this case unless we totally abandon the accepted theory of the Act, viz., that the Act is to compensate the beneficiary for the pecuniary loss sustained by such person. In Gulf, Colorado & S. F. Ry. Co. v. McGinnis, 228 U.S. 173, 33 S.Ct. 426, 57 L.Ed. 785, the deceased left a widow and four children, one of whom was married and supported by her husband. The lower Court considered all four daughters as beneficiaries under the Act, but the Supreme Court held the daughter who was married and supported by her husband had no part in the recovery under the Act, but the recovery was limited to those suffering actual pecuniary loss. If the pecuniary loss is the accepted basis, then the period that such loss will be sustained must be a factor to receive consideration, and children of different ages cannot be treated alike.

From the foregoing and adopting the method employed in Tumolo v. Reading Co., D.C., 52 F.Supp. 956, I think the proceeds of settlement should be divided as follows:

| | Years of pecuniary loss | |
| --- | --- | --- |
| Corrine L. Hudson | 31.75 | (31.75/54.75 × 21666.50 = 12564.43 |
| Elizabeth L. Hudson | 9. | ( 9/54.75 × 21666.50 = 3561.85* |
| Susan L. Hudson | 14. | ( 14/54.75 × 21666.50 = 5540.22 |
| | | 21666.50 |

*a discrepancy of a few cents was adjusted.

The foregoing method of distribution was followed in the Orphans Court of the State of Delaware in Russo's Estate, 32 Del.Ch. 598, 599, 86 A.2d 369. There Judge Layton held the same views regarding the statute as are herein expressed.

### Gelardos Claim

The difficulties appearing in the Hudson claim are not present in the Gelardos claim. Here the deceased was an unmarried man, 23 years of age, and the only person receiving support or aid from the deceased was his mother, Panagiota Gelardos, a resident of Greece. Settlement of the claim has been agreed to in the sum of $7,500, which after deducting the agreed counsel fee of 33⅓% leaves the sum of $5,000 to be awarded to the mother, Panagiota Gelardos.

Questions have been suggested as to whether in addition to the approval of the settlements by this Court, approval should also be had of the Court by which the administrator was appointed. The questions stem from the views expressed in Haidacker v. Central R. Co. of New Jersey, D.C., 52 F.Supp. 713. There it is said that the necessity of obtaining the approval of the Court appointing the administrator depends upon the laws of the state where such appointment is made.

11. Holliday v. Pacific Atlantic S. S. Co., D.C., 117 F.Supp. 729.

It was said that in New York the approval of the Surrogate of New York was required. In both the present matters the appointment of the personal representatives was made by a Court in Virginia. It is stated by counsel that no law of Virginia requires the approval of the appointing Court. In New York it appears by Amo v. Leonard, 262 App.Div. 467, 30 N.Y.S.2d 183 and In re Amo's Estate, 264 App.Div. 516, 35 N.Y.S.2d 808, that a statute permitting limited administration, without bond, expressly requires that approval by the Surrogate must be given to a settlement of the claim so that proper bond may then be required. This, of course, seems proper when funds come into the hands of the administrator for distribution by him. The above cited cases hold no approval is required if judgment has been entered or an order made upon which judgment may be entered.

 Upon principle, however, I cannot see how such approval could be required or considered. As heretofore indicated, the administrator does not sue on behalf of the estate and any recovery or settlement does not constitute any asset of the estate. The personality of the plaintiff, to whom the cause of action is given, is the creature of the statute. The statute could as well have given the cause of action to the Clerk of the Court or the District Attorney to act as trustee in bringing the suit for the benefit of the relatives suffering pecuniary loss. The action is compensatory and intended to compensate the relatives alone for their pecuniary loss. In Southern Ry. Co. v. Stewart, 8 Cir., 115 F.2d 317, the administratrix received the approval of a settlement by a Probate Court in Illinois. Subsequently she repudiated the settlement and applied for a revocation of the Probate Court's approval. Upon denial of this application she instituted suit. The trial court refused to consider the approval of the Probate Court as binding and, upon appeal, the Circuit Court held no approval of the Probate Court was required.

It would be an anomalous situation if, in an action in this Court, approval was given by this Court to a settlement but such approval was denied by the Court appointing the administrator or executor. Upon such refusal, if approval be required, the action would continue in this Court and, if recovery be had, the amount of the verdict would be apportioned by the jury or Court to the beneficiaries with no payment to the personal representative of the deceased.

This anomaly would be accentuated if, as here, the death occurred more than a marine league from shore and an action brought in admiralty pursuant to 46 U.S. C. § 761 et seq., where no concurrent jurisdiction of a state court existed. In such case it was held in Re Rademakers Estate, 166 Misc. 201, 2 N.Y.S.2d 309 that allocation was required to be in the admiralty court.

The allocation of the amount agreed to by the settlement as indicated herein varies somewhat from the suggested allocation in the petition filed herein.

Appropriate orders according to the views herein expressed may be submitted.